## TRUSTS.

Circuit Court of Ashtabula County.

W. H. STOCKTON v. J. S. MATSON ET AL.

Decided, January Term, 1912.

*Express and Resulting Trusts—Agreement with Reference to the Purchase of Land and the Subsequent Conveyance of an Interest Therein—Agreement Disregarded by the Party Taking Title—Different Classes of Agreements with Reference to the Acquirement of Title Distinguished.*

S made a verbal agreement with M and wife that the latter parties should purchase a certain piece of real property with their own funds and take title in the name of the wife, and after such purchase and conveyance M and wife were to convey an undivided one-half interest in the property to S, he paying one-half the original purchase price. M and wife purchased the property with their own money—S paying no part of the purchase money—and took title in the name of the wife. On refusal of M and wife to convey to him, S brought suit to recover an undivided one-half interest in the property.

*Held:* That no trust resulted from the transaction and that the verbal agreement could not be enforced.

*Hoyt, Munsell & Hall,* for plaintiff in error.
*Perry & Hitchcock,* contra.

NORRIS, J.; POLLOCK, J., and METCALFE, J., concur.

Error to Ashtabula Common Pleas Court.

The case of W. H. Stockton v. J. S. Matson, Grace Matson, his wife, and C. F. Gran, is a proceeding in error to reverse the judgment of the court of common pleas sustaining a demurrer to the amended petition of the plaintiff filed in that court.

The amended petition is a very long one, and it is not necessary to take the time to read at any length from it to get a fair understanding of the case.

The plaintiff alleges that the defendant, J. S. Matson, and Grace B. Matson, his wife, lived in Ashtabula, and that Gran is also a resident of that city; that prior to February, 1909, Gran had a land contract with one Edgar E. Scoville, of Cleveland, for what is called the Gran plat in Ashtabula, describing the land, and that the plaintiff and the Matsons, being friends, talked about a purchase of that plat of land, and there are several pages containing statements with reference to various efforts and negotiations, with the purpose in view of acquiring this piece of land; that it could have been bought at one time for $5,100, and that this Gran owed some money on it to the plaintiff, and he used it in that way to purchase the property. But that fell through, and finally it developed, according to the history contained in the pleading, that it could be bought from Scoville for $3,500.

The plaintiff at that time, it appears, had not sufficient means to purchase the property, and he alleges in his petition that it was agreed between him and Mr. and Mrs. Matson that they should purchase the property with their own funds, taking the title in the name of Mrs. Matson, and thereafter she should convey the one-half of it to the plaintiff. That thereupon, in pursuance of that arrangement, as stated in the pleadings, the Matsons did purchase this property from Scoville, or whoever held the legal title, and took the title in the name of Grace B. Matson. That thereafter the plaintiff, I think, built some sidewalks upon it, and spent money to the amount of some $38, perhaps, in that kind of improvements.

That thereafter he demanded of Mrs. Masten that she carry out this agreement, and make a contract with him to convey one-

half of this property to him; he demanded such a conveyance, but he failed to make her do so.

Then follows some pages of charges that they fraudulently conspired not to carry out this contract, and that they did not carry it out, although repeatedly requested so to do.

Then there are a number of questions in reference to some descriptions of the property that are not important to determine the issue in question; also the allegation on the part of the plaintiff that some lots have been sold, and he claims he has an interest in those sales by way of compensation. Plaintiff asks that said Grace B. Matson be held to be a trustee in trust of said property, that he be decreed to be the owner of an undivided half interest therein, subject to the payment on his part of one-half the purchase price, and that a conveyance be made.

To this amended petition a demurrer was filed, on the ground that it does not state facts sufficient to constitute a cause of action, and that is the question we are to decide here.

We have spent a good deal of time considering this case, have looked over a good many authorities upon it, and spent some little time trying to harmonize them, and find out what is the correct principle underlying this transaction.

It has been very ably argued on the part of counsel for plaintiff, that an express trust arises from the facts in the case. That because of the agreement entered into between the plaintiff and the Matsons, that they should buy this property in trust for him, in part, and agreed to convey it to him, that an express trust exists that a court of equity should carry out.

What was this arrangement and what is the condition of it? So far as the petition is concerned, the plaintiff invested no money in this land, he furnished no part of the consideration—the purchase price. So far as the allegations of the petition are concerned, Mrs. Matson, and the Matsons carried out exactly, and in express terms, the contract that was made between the parties up to the time of the taking of the deed of the property. The taking of the deed of the property in her name was in pursuance of the arrangement. There was no fraud in it—there was no wrongdoing. It was understood—it was a part of the arrangement that she should take the title in her name. Then wherein

can it be said that the plaintiff had any interest in that land, and by virtue of what had he an interest in that land, or a right to have any portion of it conveyed to him? Was it anything more than by virtue of a verbal agreement between him and the Matsons, that she would when she bought this property, convey a half-interest in it to him? It seems to us that that is, in substance, this arrangement, and it is to be widely distinguished from that class of cases where the party furnishes the purchase price and the title is taken in the name of the agent; or where an agreement between two parties is that one is to purchase it and take the title in the name of the other, then the moment the title is taken the fraud is perpetrated because they failed to carry out their agreement, and a court of equity in that class of cases will furnish relief. Perry on Trusts, Section 133 says:

"The trust must result if at all, at the instant the deed is taken and the legal title vests in the grantee. No oral agreements and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction."

But there was nothing in this case that was wrong, or was done wrong, except after Mrs. Matson had acquired this title she refused to carry out a contract she had made with reference to the conveyance of the property, and as we say, we think this case is to be distinguished, and the courts distinguish it from that other class of cases where by reason of either constructive trusts or trust *ex maleficio*, courts of equity afford relief and declare a trust.

The case that seems to us very close to this is the case of *Fickett* v. *Durham*, 109 Mass., 419. We want to read just a word here from the opinion making this point, on page 422:

"The whole foundation of the trust is the payment of the money, and that must be clearly proved. If, therefore, the party who sets up a resulting trust made no payment, he can not be permitted to show by parol proof that the purchase was made for his benefit or on his account," and so on.

They decide also this question, they hold in that case very much like this, that the agreement could not be carried out be-

cause it was merely a failure to carry out an agreement to convey, without any of the elements of a trust.

To the same effect is *Burden* v. *Sheridan,* 36 Iowa, 125. Just one paragraph from the syllabus:

"A resulting trust can not be sustained by parol evidence, where no part of the purchase money was paid by the person claimed to be the *cestui que trust.*"

Another case similar to this case is the one of *Perry* v. *McHenry,* 13 Ill., 227.

These cases from Massachusetts, Illinois, and Iowa have been cited with approval, and are, as it seems to us, substantially followed by our own Supreme Court, in the cases of *Watson* v. *Erb,* 33 O. S., 35, and *Taylor* v. *Newton,* 32 O. S., 399, and are decisive of the question before us.

We think the principle that we have attempted to announce is very clearly sustained by these authorities, and that the only question we have here is the question of a failure on the part of these parties to carry out a verbal agreement for the conveyance of land, and that because of the fact that no part of this purchase price was paid, and there was no fraud in the taking of this deed on the part of Mrs. Matson, because it was in pursuance of the agreement, and there was no fraud any where in the case up until the time and after the entire transaction was carried out, except her failure to carry out her verbal agreement to convey this property or an interest in it.

We think this petition does not state a cause of action in favor of the plaintiff and the judgment of the court below will be affirmed without penalty.