[No. 11246. Department One. February 14, 1914.]

E. W. Croup, *Appellant*, v. W. N. DeMoss *et al.*,
*Respondents.*[1]

Frauds, Statute of—Resulting Trust. An oral agreement to purchase an interest in a mining claim for the use and benefit of another, is, standing alone, unenforcible under the statute of frauds; and its breach does not give rise to a resulting trust.

Trusts—Resulting Trust—Evidence. A resulting trust in land must be established by evidence that is clear and convincing.

Trusts—Resulting Trust—Establishment. There is no resulting trust from the purchase of an interest in a mine under an oral agreement to do so for the use and benefit of another, where the trustee did not pay or advance any of the money to make the purchase.

[1]Reported in 138 Pac. 671.

VENDOR AND PURCHASER—BONA FIDE PURCHASER. A resulting
trust cannot be claimed against a *bona fide* purchaser from the *cestui
que* trust, the trustee having asserted no claim for three years after
the alleged creation of the trust.

COSTS—DISCRETION. Costs are largely discretionary, where each
party has sought to gain entire control of property jointly owned.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered December 23, 1912, dis-
missing an action to declare a trust, after a trial on the
merits to the court. Affirmed.

*W. F. Crowe,* for appellant.

*J. G. Thomas* and *W. A. Toner,* for respondents.

ELLIS, J.—In this action, the plaintiff sought to establish
a resulting trust in his favor in an undivided one-fourth in-
terest in certain mining claims, located in Warren Mining
District, in Idaho county, Idaho. The material facts which
we have been able to gather from the deplorably confused
record are as follows: The group of mining claims in ques-
tion were, in 1907, owned, an undivided one-half by the plain-
tiff, an undivided one-fourth by the defendant DeMoss, and
an undivided one-fourth by one Scales, of Grangeville, Idaho.
It was the purchase of this last mentioned one-fourth interest
by the defendant Snell, after an option thereon had been
taken by the defendant DeMoss, which option the plaintiff
claims was taken for his benefit and should have been in his
name, which gave rise to the present controversy. The plain-
tiff did all of the assessment work, amounting to $400, on all
of the claims, for the year 1907. The portion of this assess-
ment work which should have been borne by DeMoss and by
Scales was $100 each. In 1908, DeMoss did all of the as-
sessment work upon the claims and early in 1909 attempted
to forfeit, by advertisement, the half interest in the claims
owned by the plaintiff. In the fall of 1907, there seems to
have been some negotiation between the plaintiff and Scales

for the sale to the plaintiff of the one-fourth interest then owned by Scales. The price fixed by Scales for this interest was $500. About the time the defendant DeMoss started to the claims to do the assessment work for 1908, the plaintiff asserts that DeMoss agreed to visit Scales and endeavor to secure an option on the Scales interest for the plaintiff, and in the plaintiff's name. About October 28, 1908, on his return from doing the assessment work, the defendant DeMoss secured an option in his own name from Scales for a consideration of $300, to be paid on or before January 1, 1910, and, as a further consideration, agreed to settle for the annual assessment work due from Scales for the years 1907 and 1908, and to do the assessment work for the year 1909.

In July, 1909, the defendant DeMoss, assuming that he was then the owner of a three-fourths interest in the claims, consisting of his own original one-fourth and the half interest formerly belonging to the plaintiff, which he claimed plaintiff had forfeited by failure to do the assessment work of 1908, and having an option on the remaining fourth interest (DeMoss thus claiming to control all interests in the claims), entered into a contract to sell to the defendant Snell and one Hoyt an undivided one-half interest in the claims, in consideration that Snell and Hoyt furnish $800 to equip and put the mine on a paying basis. The record fairly shows that Hoyt and Snell have carried out this agreement, and it is admitted that, on August 10, 1910, they received a deed from DeMoss for an undivided one-half interest in the claims. During the continuance of the option which DeMoss had taken for the Scales interest, DeMoss, being unable to pay the $300 purchase price, procured the necessary money from Snell, and about December 31, 1909, a deed was made by Scales to DeMoss, conveying this one-fourth interest. It is claimed that this deed was not delivered until January 4, 1910, after the option had expired, but we think that it sufficiently appears that Scales made the deed in pursuance of the option.

Shortly after the deed from DeMoss to Hoyt and Snell, conveying an undivided one-half interest in the mining claims, the plaintiff, Croup, brought an action in Idaho to set aside the proceedings under which his one-half interest in the claims had been forfeited by advertisement. In that action, he secured a decree quieting his title to an undivided one-half of the claims. The stenographic report of the testimony in that action, as given by both DeMoss and Croup, was, by stipulation, made evidence in the present case. The defendant Humboldt Quartz & Placer Mining & Milling Company has contracted to purchase a half interest in the claims, including the one-fourth interest originally owned by Scales. It is admitted that nothing has been paid on this contract, and the plaintiff asks that any payment to be made upon it be made to him to the extent of this one-fourth interest which he claims. The present action was tried to the court without a jury. The evidence was conflicting in every material particular; and the court, without making formal findings, so far as the record shows, other than the finding included in the preamble to the judgment that it appeared to the court that the evidence was insufficient to establish the trust alleged in the plaintiff's complaint or to entitle the plaintiff to the relief prayed for, adjudged that the action be dismissed without costs to either party. The plaintiff appeals.

The appellant insists that a trust resulted from three circumstances: first, that DeMoss agreed to take the option on the Scales interest in the appellant's name, and for the appellant's sole benefit; second, that the appellant paid a part of the purchase price and offers now to pay the $300 advanced by Snell; and, third, that the respondent Snell knew of the appellant's claims in the premises when he took the deed from DeMoss, conveying the quarter interest purchased from Scales.

The evidence as to whether there was any agreement between the appellant and the respondent DeMoss touching the taking of the option was in sharp conflict. If there was any,

it was an oral agreement and related to an interest to be acquired in real estate. Standing alone, it was, therefore, unenforceable under the statute of frauds. It is no answer to say that the failure to carry out such an agreement was a fraud opening the whole transaction to parol proof. To so hold would be to abrogate the statute and make every contract rest in parol proof upon a mere allegation of its breach. 1 Perry, Trusts (6th ed.), § 134. It is clear, therefore, that this agreement, assuming that it existed, created no trust in the mining claims, or in the title acquired by DeMoss through the deed from Scales, made in pursuance of the option, unless, from other circumstances, there was a trust arising or resulting by implication of law. If such a trust ever existed, it arose immediately upon the execution of the papers by which the title passed from Scales to DeMoss. It vested the instant the deed was taken, or not at all. It could not result from a prior oral agreement alone, or from subsequent payment or tender of the purchase price by the appellant. 1 Perry, Trusts (6th ed.), § 135; *Bowen v. Hughes*, 5 Wash. 442, 32 Pac. 98. It must have arisen, if at all, either by payment of the entire purchase price by the appellant at the time the option was taken up and the deed made, in which case the title to the entire one-fourth interest would be held in trust for the appellant, or it must have arisen *pro tanto* by the payment of an aliquot part of the purchase price by the appellant, in which case it would vest an equitable title to an aliquot part of the one-fourth interest proportional to such payment. *Guthrie v. Tullock*, 5 Wash. 283, 31 Pac. 871.

It is clear, therefore, that the appellant's claim of a resulting trust in his favor must stand or fall by the evidence as to whether or not he paid any part of the purchase price of the Scales interest on or before the conveyance of that interest to DeMoss. In order to establish a resulting trust, a plaintiff is held to the same strict rules of proof which are required for the establishment of fraud. His proof of facts

establishing the resulting trust must be clear and convincing. *Denny v. Holden*, 55 Wash. 22, 103 Pac. 1109:

"In order to establish the fact that a trust has been created by implication, on the ground that an estate has been purchased in the name of one person, but the money or consideration given by another, it must be clearly proved that such payment has been made, and it must be proved to have been made by the person who claims the benefit of the trust, and at or before the time of the purchase." Jones, Evidence (2d ed.), § 420.

The law applicable to the case here presented is clearly stated by the supreme judicial court of Massachusetts in *Bailey v. Hemenway*, 147 Mass. 326, 17 N. E. 645, as follows:

"When the money for the purchase of land is paid or furnished by one person, and the deed is taken in the name of another, there is a resulting trust created by implication of law in favor of the former. It is also true that, when one person pays the money for a specific share, an aliquot part of the land, such as one half or one quarter, or other fixed fraction of the whole, and the title to the whole is taken in the name of another, a trust results in favor of the former for such aliquot part. But a general contribution of a sum of money towards the entire purchase is not sufficient to produce this result. When, therefore, one makes an oral contract with another that the latter shall buy land, on joint account, and he in violation of the contract takes the deed to himself, no trust results in favor of the former as to one half of the land, unless it is shown that he furnished the money for the one half—in other words, that it was bought with his money. *McGowan v. McGowan*, 14 Gray. 119; *Fickett v. Durham*, 109 Mass. 419; *McDonough v. O'Neil*, 113 Mass. 92; *Parsons v. Phelan*, 134 Mass. 109; *Collins v. Sullivan*, 135 Mass. 461; *Dudley v. Batchelder*, 53 Maine 403; *Smith v. Burnham*, 3 Sumner 435 . . . A resulting trust depends upon the fact that the money of the person claiming it was used in the purchase, and it cannot be raised by any future payments or tender. 'The trust,' says Chancellor Kent, 'results from the original transaction at the time it takes place, and at no other time, and it is founded on the

actual payment of the money, and on no other ground. It cannot be mingled or confounded with any subsequent dealings whatever.' "

The foregoing principles are decisive of the case before us. The record makes it clear that Snell is the only person who ever paid any actual money on the option or in consideration for the deed. The only evidence tending to show that the appellant ever paid a cent upon it is the admitted fact, shown by the option itself, that the respondent DeMoss agreed to settle for Scales' proportion of the assessment work, amounting to $100, which the appellant had performed for the year 1907. There was much evidence tending to show that De-Moss had settled for this by crediting this amount of $100 upon his account against appellant for the assessment work of 1908; and in his evidence at the Idaho trial, the appellant practically admitted this, it being then to his interest to show that he had paid DeMoss for the assessment work for 1908. In any event, a resulting trust could not be asserted as against the respondent Snell, unless he had notice of the facts out of which such a trust would arise prior to the time he advanced the purchase price and received the deed of the property. The notice which the appellant claims to have given to Snell of his alleged interest in the option was vague and indefinite, even according to the appellant's own testimony, and is utterly denied by Snell. The appellant made no formal assertion of an interest under the deed from Scales to DeMoss, or under the option until almost three years after the deed was made. No such assertion was made or attempted until the property appears to have become valuable and salable at a large profit. These are circumstances strongly tending to discredit the claim now made that, at the beginning, DeMoss was to take the option in the appellant's name, and for his benefit, or that the appellant then considered that he had furnished the money to pay for the Scales interest or any part of it.

A painstaking examination of the confused record leads us to the same view expressed by the trial court, that the evidence was wholly insufficient to establish the trust alleged, either in whole or in part.

The respondents gave notice of appeal from that part of the judgment refusing to award them their costs. Inasmuch as the record presents one of those unfortunate controversies resulting from the efforts of each of the persons interested in property jointly owned to gain a control over the entire property and deprive the other of his interest, we think the question of costs is one resting largely within the discretion of the trial court. We find no sufficient reason for disturbing the judgment.

It is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.