(No. 23271
TARPO MIOVSKY, Appellee, *vs.* NICK GEORGEOFF *et al.*
Appellants.

*Opinion filed February 19, 1936—Rehearing denied April 10, 1936.*

MANUEL M. WISEMAN, and J. P. STREUBER, (J. F. SCHLAFLY, JR., of counsel,) for appellants.

WESLEY LUEDERS, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellee filed a bill in the circuit court of Madison county seeking to have certain real estate in Granite City impressed with a trust for his benefit, claiming that appellant Nick Georgeoff purchased it as his agent and appellants are obliged, under the agreement with appellee, to deed the property to him, subject to the payment of the sum specified in the bill. A decree was entered in accordance with the prayer of the bill and is here for review.

It appears from the allegations of the bill that appellee had owned the property; that some years previously the

building was burned and that appellee re-built on the premises at a cost of approximately $16,000, of which about $4500 remained unpaid and subjected the property to mechanics' liens. These liens were foreclosed and the property sold. The Coudy Bros. Lumber Company purchased this property at the sale as trustee for all lien claimants. Later appellee entered into negotiations with Coudy Bros. for the re-purchase of the property. W. C. Rainford, of Coudy Bros., told appellee that nothwithstanding the fact that Coudy Bros. owned the property as trustee, the real owners were willing to re-convey the premises to him upon the payment of the amount of their claims, with interest and costs. The bill also charges that appellee went to appellant Nick Georgeoff and asked him to advance funds for the purpose of assisting in the re-purchasing of the property, which he agreed to do. It is alleged in the bill that the amount necessary to redeem was approximately $5300 but that the owners agreed to take $4750 for the property. The bill charges that notwithstanding the agreement Nick Georgeoff purchased the property for himself, and that when appellee secured the services of another person, one Tom Otso, to purchase the property for him, he found that Georgeoff had purchased it for himself.

The answer of appellants denied all material allegations of the bill. A hearing was had before the chancellor and evidence offered in support of the contentions of the parties. The decree found that Rainford, after the issuance of a master's deed to the Coudy Bros. Lumber Company, acted as trustee for twelve lien claimants, and that he, on behalf of the owners, agreed with appellee that the latter might re-purchase the premises and that the owners would re-convey upon the payment of the amount of the lien claims, with interest and costs; that appellee sought the assistance of Nick Georgeoff to advance the sum of $1000 as first payment on the purchase price, and that Georgeoff agreed to advance the money necessary to purchase the property

for appellee, the title to be taken in the name of Georgeoff. The decree also finds that because of long acquaintance appellee reposed confidence in Georgeoff; that Georgeoff consulted with appellee as to the amount of monthly payments appellee would make to him upon the purchase price and that appellee and Georgeoff disagreed; that appellee then advised Georgeoff not to proceed further with the transaction but appellee would secure financial aid elsewhere, and that Georgeoff advised appellee he would give up the matter and proceed no further. The decree also finds that on the next day after this conversation Rainford called upon Georgeoff, and the latter advised him of the disagreement with appellee and that he was no longer interested in advancing any funds to purchase the property for appellee, whereupon Rainford suggested that Georgeoff buy the property for himself, which the latter refused to do; that on the afternoon of that day one Henry Vangeluf, acting on behalf of Georgeoff, arranged for the purchase of the property for Georgeoff, and that this transaction was without the knowledge or consent of appellee. The chancellor also found that a few days thereafter Tom Otso agreed to advance appellee the money to purchase the property but that Georgeoff refused to re-convey the premises. The chancellor found that a fiduciary relation existed because of the agreement of Georgeoff to advance the funds to appellee to purchase the property, and that Georgeoff abused and betrayed that confidence and perpetrated a fraud on appellee by obtaining a deed to the property for himself. The decree finds that appellants hold the title as trustees for the benefit of appellee, and orders that it be conveyed to appellee on the payment of the sum of $4750 and interest.

Appellants do not contend that the facts as to what occurred are different from those found by the chancellor but they do contend that no confidential relation existed between the parties by reason of that fact, and that the decree did not find that such existed at the time Nick

Georgeoff acquired the property. They further say that the relation of principal and agent, if any existed between the parties, had been terminated by appellee prior to the time Georgeoff acquired the property; that he did not acquire the property under a representation to or belief by the owners that Georgeoff was acting for the benefit of appellee, but, on the contrary, that he purchased it on solicitation of the owners after they were informed he was not acting for appellee. They also point out that at the time Georgeoff acquired the property no contract or agreement existed between appellee and Georgeoff, but such agreement on the part of Georgeoff had been terminated because of inability to agree on the terms of repayment of the funds to be advanced and by the demand of appellee that Georgeoff go no further with it.

If a fiduciary relationship existed between the parties at the time of the purchase of the premises the decree is right. However, the decree also found that the agency of Nick Georgeoff to purchase the property had been terminated by appellee, and that Georgeoff was told by appellee to do nothing further with reference to the purchase of the property for and on behalf of the latter. It also appears from the evidence and from the decree that no contract or agreement to advance the money to appellee was ever completed between the parties, for the reason that they could not agree on the manner or amounts in which the money should be repaid. Georgeoff insisted that appellee pay $65 per month, while appellee declared he could pay but $10 or $15 per month. There was no meeting of the minds, and appellee had no reason to assume that a purchase of the property would be made for him by Georgeoff. There are likewise here the facts that no benefit was to flow to Georgeoff from this arrangement. The agency which he expressed a willingness to accept was to have been purely gratuitous and the negotiations were terminated by appellee prior to the purchase of the property by him. The decree

also finds, and it is supported by the evidence, that Rainford, on behalf of the owners, solicited Georgeoff to purchase the property on his own account after Georgeoff had informed him that he was no longer representing appellee and was not interested in the premises. The negotiations having thus been terminated before Georgeoff purchased the property, the query arises, Does the fiduciary relationship, if such ever existed, continue?

In *Clark* v. *Delano,* 205 Mass. 224, 91 N. E. 299, Clark filed a bill in equity to compel Delano to convey certain real property to him. It appeared that Clark had been the owner of the property subject to a mortgage and a lien for unpaid taxes. The mortgagee began foreclosure proceedings and gave notice of sale under a power appearing in the mortgage deed. Clark applied to numerous brokers for a loan and about a month before the date of the sale employed Delano to act for him in endeavoring to procure such loan, subject to his own right to procure a loan through other brokers. About a week before the sale Clark and Delano met for the last time, and Delano advised Clark that he had been unable to obtain a loan and advised him to secure a loan from his bank if he wished to save his property. Clark replied that he had attempted so to do without success and asked Delano to continue his efforts, to which request Delano made no reply. Delano purchased the property in his own name. He testified that he conceived the idea of purchasing the property on the day before the sale. The chancellor concluded, however, that by undertaking to act as broker to procure a loan for Clark, Delano entered into such fiduciary relation that he could not buy the property at the sale for his own benefit though the agency had been terminated. The decree was reversed by the Supreme Judicial Court of Massachusetts. It was there said: "Was the defendant, by reason of that employment, (as broker,) in such relation to the plaintiff as to preclude him from bidding at the auction as any other per-

son might do? This question must be answered in the negative. His employment was terminated beyond his control. When the auctioneer began the sale there was nothing more he could do for the plaintiff as broker. In reference to the sale which was going on he stood as if he had never been employed by the plaintiff. If a sale must be made there was nothing in his buying which was inconsistent with his former relation with the plaintiff. * * * In his position there was no constructive trust for plaintiff." Citing *Collins* v. *Sullivan,* 135 Mass. 461; *O'Reilly* v. *Bevington,* 155 id. 72.

The facts of the case before us are more strongly in favor of the position of appellants than those in the Massachusetts case. Here there was no agreement between the parties that Nick Georgeoff purchase for appellee. They could not agree upon the manner in which the money was to be re-paid and appellee himself terminated the negotiations. There is nothing to indicate that Georgeoff's demands concerning the re-payment of the money were unreasonable. Under these facts it can scarcely be said that a constructive trust resulted in the purchase of the property by Georgeoff. Appellee must have known from their failure to agree that Georgeoff was not acting for him and would not so act. The chancellor erred in finding that Nick Georgeoff was acting in a fiduciary capacity at the time he purchased the property from the then owners and in decreeing that appellants convey the property to appellee on payment of the amount of the purchase price.

In this case a temporary injunction was issued without notice and without bond restraining appellants from attempting to take possession of the property. Appellants urge here that having been kept out of the use of the property, for which appellee has paid no rent, there should be an accounting of the damages sustained by them by reason of entry of the injunction and retention of the property by appellee. This position is but just.

The decree of the circuit court is reversed and the cause is remanded to enter a decree in accordance with the views expressed in this opinion and to refer the cause to the master in chancery for an accounting.

*Reversed and remanded, with directions.*