PATRICK BOURKE *vs.* JOSEPH F. CALLANAN & another.

Hampden.    September 28, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Oral Promise to buy Land — Trust — Statute — Resulting Trust — Equity
Practice — Motion to frame Issue for Jury — Discretion of Court.*

B. orally promised A., who owned land subject to a mortgage thereon, to attend a
foreclosure sale of the same, and to bid it off for him. B. accordingly bid off the
land at the sale, received a deed of the same, and gave a mortgage back, the
mortgage note being signed by him alone, for the larger portion of the purchase
price, paying the balance with his own money, and receiving part only of such
balance from A. on the same day. *Held,* upon a bill in equity by A. against B.
for a conveyance of the land, that, under Pub. Sts. c. 141, § 1, B. could not be
charged with a trust in respect of the land ; that there was no resulting trust
in A.'s favor; and that the bill could not be maintained. ALLEN & KNOWL-
TON, JJ. dissenting.

A motion to frame issues for a jury in an equity case is addressed to the discretion
of the presiding justice, and this court will not revise such discretion on appeal
from an order overruling the motion, especially when it appears that the case
had been marked for hearing six weeks, and the juries had been excused be-
fore the motion was made; and an omission to file a replication does not better
the case.

HOLMES, J.   This is a bill in equity against Joseph F. Cal-
lanan, and against Willmore B. Stone, a subsequent purchaser
of the land in question, seeking to charge the defendants with
a trust in respect of certain land formerly belonging to the
plaintiff and his brother as copartners, and purchased by the
defendant Callanan at a foreclosure sale.   The only prayers are
for an accounting, for rents and profits, and for a decree for a
conveyance upon payment of whatever is due from the plaintiff
to the defendants.   One ground relied on is, that the plaintiff's
brother, having no beneficial interest in the land, and the plain-
tiff wishing to get a clear title to it, and therefore wishing a
mortgage on it to be foreclosed, the defendant Callanan prom-
ised him to go to the sale, and to bid off the property for him.
The answer to this is that the promise was not in writing, that
the defendant Callanan got the legal title to the land, and
that he and his successor in title are not to be charged with a

trust on the ground of an oral promise.    Pub. Sts. c. 141, § 1. *Emerson* v. *Galloupe*, 158 Mass. 146.

The other ground relied on is that there was a resulting trust because the defendant Callanan made the purchase with the plaintiff's money.    The mortgage sale was on June 25, 1889, at which date the defendant Callanan bid $35,500.    On June 27 he received his deed and gave a mortgage back for $33,000. The mortgage note was signed by the defendant Callanan personally, and alone.    At the same time, as we understand the master's report, which is a little obscure on these points, the defendant Callanan paid over $2,034.60 in cash, the remaining $465.40 being retained by him until a later date.    On the same June 27 the defendant Callanan received from the plaintiff $1,437, and no more.    It is impossible, therefore, to say that the consideration actually was furnished by the plaintiff at the time of the purchase.    Payment of part of the consideration is not enough, and the mere fact that the defendant Callanan had agreed to buy for the plaintiff will not convert a payment of his own money into a loan to the plaintiff, and thus indirectly create a resulting trust in the mode which we are discussing out of an oral agreement which could not be allowed any direct effect except in the teeth of the statute.    See *McGowan* v. *McGowan*, 14 Gray, 119, a case very like the present.    In *Olcott* v. *Bynum*, 17 Wall. 44, 59, where the purchaser paid cash advanced by the plaintiff, and gave a mortgage for the residue of the purchase money, the cash not having been paid for any aliquot part, it was held that the principle of resulting trusts had no application, and that, if it did, it could have no application in respect to the sum for which the purchaser gave his own obligation.    *McDonough* v. *O'Niel*, 113 Mass. 92, was not intended to controvert or to qualify *McGowan* v. *McGowan* in any way.    In that case the purchase was of an equity of redemption for cash, not of unencumbered land for cash and a mortgage back. The resulting trust was of the equity of redemption only.    The defendant, it is true, made a new mortgage note, but not to the vendor, Godfrey, or at his requirement, but to the former mortgagee, Clements, at his requirement.    This mortgage had been paid off by the plaintiff's testator before the bill was brought. In the opinion of a majority of the court, the plaintiff is

not entitled to a conveyance of the property, even as against Callanan.*

We are aware that by our construction of Pub. Sts. c. 141, § 1, the statute of frauds may be made an instrument of fraud. But that always is true, whenever the law prescribes a form for an obligation. The very meaning of such a requirement is that a man relies at his peril on what purports to be such an obligation without that form. *Bragg* v. *Danielson*, 141 Mass. 195, 196. *Parker* v. *Barker*, 2 Met. 423, 431. If the present case suggests the possibility that wrong may be accomplished through the forms of law, it equally suggests the danger which the statute was intended to meet. What might have been regarded by the defendant Callanan as a mere promise to resell to the plaintiff easily might have been interpreted by the plaintiff as the assumption of an agency. In fact, it is unlikely that the distinction between the two positions was thought of by the parties, even if they would have understood it if it had been presented to them. In either case, the defendant Callanan in a popular sense might be said to promise to buy the land for the plaintiff.

The plaintiff's appeal from the order overruling his motion to frame issues for a jury cannot prevail. The motion was addressed to the discretion of the court, *Ross* v. *New England Ins. Co.* 120 Mass. 113, 117, and we cannot say that the discretion was not exercised rightly. The delay in making the motion is enough to justify the order, without more. The case had been marked for hearing six weeks, and the juries had been excused before the motion was made. The plaintiff's omission to file his replication does not better his case. *Stratton* v. *Hernon*, 154 Mass. 310, 312.               *Bill dismissed.*

Justices ALLEN and KNOWLTON are unable to agree with the result reached by the majority of the court, and think the decree of the Superior Court in favor of the plaintiff should be affirmed, for the following reasons, briefly stated. The defendant Callanan in his answer avers that, if he would buy the property, the plaintiff promised to furnish the amount of money

---

* The master found that the defendant Stone was a purchaser of the property in good faith, and for a fair and reasonable price, and that the purchase by him was assented to by the plaintiff.

necessary to pay for the same, and that he, Callanan, bought the same because of that promise, and of the plaintiff's agreement to take the property from him soon after the sale. The special master reports that the plaintiff asked the defendant Callanan to assist him, and the defendant promised to attend the auction sale, and bid off the property for the plaintiff, and hold it for the plaintiff's benefit; that the defendant Callanan, pursuant to his agreement, attended the sale, and bid off the property, and gave back to the bank his note and mortgage on the same property for $33,000, and that all of the money expended by him in excess of the note and mortgage was furnished by the plaintiff for this specific purpose. Whatever Callanan did was done for the plaintiff's benefit, and if he advanced any money, it was by way of loan ; and in giving the note and mortgage, he was merely lending his credit to the plaintiff in pursuance of the understanding between them. This view is supported by the testimony of Mr. Stearns, who was counsel for the plaintiff in relation to the sale ; and in the opinion of the dissenting justices, the special master and the justice of the Superior Court were well warranted in finding for the plaintiff, the case falling within the doctrine established in *McDonough* v. *O'Niel*, 113 Mass. 92, and *Hennessey* v. *Connor*, 139 Mass. 120.

*G. Wells & W. W. McClench*, (*J. Barnes* with them,) for the plaintiff.

*T. M. Brown*, for Callanan.

*G. D. Robinson*, for Stone.